FILED

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA 97 JAN 31 PM 4:59
NORTHWEST DIVISION

U.S. DISTRICT COURT
N.D. OF ALABAMA

LEROY DARBY,                    }
                                }
   Plaintiff,                   }
                                }
v.                              }    CASE NO. CV 96-B-0443-NW
                                }
COMCAST CORPORATION,            }    ENTERED
                                }
   Defendant.                   }
                                     FEB 03 1997

MEMORANDUM OPINION

Currently before the court is the defendant's Motion for Summary Judgment. Upon consideration of the record, the submissions of the parties, the arguments of counsel and the relevant law, the court is of the opinion that Defendant's Motion is due to be granted.

FACTUAL SUMMARY

This is a lawsuit to recover medical benefits under a medical plan for retirees. The Plaintiff, Leroy Darby ("Darby") retired in April 1994 from employment with the local cable television system, Cablevision of the Shoals, in Florence, Alabama. At the time of his retirement, plaintiff was 58 years old. Plaintiff had been employed by the cable system for approximately 38 years and had been the plant manager since 1980.

Plaintiff contends that upon his retirement he was denied continued medical benefits in violation of ERISA. The defendant counters that under its plan documents, eligibility for continued medical benefits was and is conditioned upon the attainment of the minimum age of sixty-two.

The Shoals-area cable system was owned by various entities throughout Darby's tenure. In 1986, defendant Comcast Corporation ("Comcast") acquired the Muscle Shoals cable television

system from Group W Cable (Westinghouse). On December 10, 1986, Darby enrolled in the medical plan for Comcast.

Paul Gillert[1] stated in his affidavit that in 1986, when Comcast acquired the Shoals cable system from Westinghouse, Comcast had an insured medical plan through Prudential Insurance Company. Under that plan, employees were eligible for retiree insurance benefits if they retired from Comcast at age sixty-two or over with at least five years of full-time service. Eligible employees would be provided one year of coverage for each three years of full-time employment as described in the Comcast Corporation Plan document. (Gillert Aff. ¶ 2).

In 1989, Comcast changed from an insured plan to a self-insured plan supervised by Susquehanna Administrators, which later became CoreSource, Inc. (*Id.*) In conjunction with that change, defendant adopted an employee benefit plan on August 1, 1989. A Summary Plan Description was also developed at that time. (*Id.*)

Also on August 1, 1989, Amendment No. 3 was added to the self-insured plan under Article II, Section 2.09. (*Id.* ¶ 3). That amendment stated:

> A former employee who has retired, **and who is eligible for continued coverage in accordance with the employer's retirement plan**, shall be eligible to continue coverage under this plan at the rate of one year of continued coverage for each three years of employment with the employer completed on the retirement date.

(*Id.* Ex. D) (emphasis added). The retirement plan referenced in Amendment No. 3 was also adopted in 1989. (*Id.* ¶ 5). Entitled "Retiree Benefits Program," the plan governs the availability of medical insurance benefits, COBRA continuation, conversion of group-term life insurance to

---

[1] Mr. Gillert was the Vice President of Human Resources for Comcast Cable Communications, and he has been the Vice President of Human Resources at Comcast Corporation since 1991. (Affidavit of Paul Gillert ("Gillert Aff.") ¶ 1).

individual life insurance, group universal life insurance, and benefits under the Retirement-Investment Plan for retirees. (*See id.* Ex. E). The plan specifically states that eligibility for continued medical coverage with Comcast is conditioned upon an employee being "62 or over with at least five (5) years of full time service." (*Id.*)

In 1993, a benefit summary was distributed to employees during the open enrollment period of that year. (*Id.* ¶ 7). It, too, conditioned eligibility for retiree medical coverage on the attainment of the minimum age of 62. (*Id.* ¶ 7, Ex. F at 14).

The underlying plans to which the Retiree Benefits Program refers are intended to satisfy the various ERISA requirements. To that end, Comcast has reported its plan to the Department of Labor annually pursuant to 29 U.S.C. §1023 and the regulations promulgated thereunder. (*Id.* Ex. G).[2]

Darby does not recall whether or not he received any type of plan document when he enrolled in 1986, but "could have" received the Comcast Corporation Group Insurance Plan then in effect. (Pl.'s Dep. at 25-26, 30). That plan specifically provided for attainment of age sixty-two prior to receiving retiree insurance benefits. Plaintiff contends that he was not aware of any age requirement for extended benefits. (*Id.* at 32-33). Further, plaintiff contends that he was told that there was no age condition and that an ex-employee would receive one year of continued

---

[2] 29 U.S.C. §1024 requires the plan administrator to file the summary plan description with the Department of Labor. During discovery, plaintiff apparently requested from Pensions and Welfare Benefits Administration, Public Disclosure Room of the United States Department of Labor, the summary plan description and received a response from the Department of Labor showing no summary plan description on file. The court is unaware of any penalty provision for failing to file a summary plan description, *see* 29 U.S.C. §1132(c), and the plaintiff has offered no nexus between failing to file a summary plan description and entitlement to benefits upon retirement.

3

medical benefits for each three years of service, regardless of age. Darby also contends that James Glover, an employee who retired in 1988 or 1989 under the age of sixty-two, received retiree medical benefits. (*Id.* at 35). He recalls that Glover was fifty-eight upon retirement. (*Id.* at 36).

By letter of February 22, 1994, Darby informed the general manager of Comcast Cablevision of the Shoals, Jim Pickens, of his retirement effective April 8, 1994. (Def.'s Ex. L). Plaintiff admitted in his deposition that in January 1994 he was informed that he would probably not be eligible for retiree medical benefits. (Pl.'s Dep. at 45). Pickens told plaintiff that he should talk to Jean Dean, the regional Administrative Services Director, about those benefits. (*Id.*) Plaintiff also spoke with Mr. Gillert who told plaintiff that he would not be eligible for medical benefits because he was retiring too early. (*Id.* at 47).

Jean Dean stated in her affidavit that in November 1992 and several times thereafter she informed plaintiff of the minimum age requirement. (Dean Aff. ¶ 4). More specifically, in November 1992, Dean conducted a benefit enrollment meeting for the Comcast employees in Florence, Alabama in which she discussed the age requirement with Darby personally and provided him with the 1993 benefit summary that expressly stated the age requirement. (Dean Aff. ¶¶ 2-4). She produced her calendar from November 16, 1992, to verify her presence in Florence on that date.

On or about January 18, 1994, Gillert faxed a packet of information to Darby that included a description of the medical insurance benefits under the Retiree Benefits Program. (Def.'s Ex. M; Pl.'s Dep. at 47-49). Plaintiff responded by letter to Gillert on January 25, 1994, and requested a copy of the plan document that was in effect in 1989. (Def.'s Ex. N). Gillert

4

responded by letter of February 4, 1994, and explained that the document faxed to plaintiff on January 18, 1994, governs benefits upon retirement. (Def.'s Ex. O). Gillert also explained that under the Retiree Benefits Program, retired employees of Comcast are eligible for paid medical insurance benefits only if the employee retired after reaching age sixty-two (having completed five years of service). (*Id.*). Gillert further explained that prior to 1989, when the Retiree Benefits Program was adopted, certain terminated employees may have received some company paid post-retirement medical coverage, as negotiated, on a case-by-case basis. (*Id.*). On February 17, 1994, Gillert also sent an entire copy of the Comcast Employee Benefit Plan document that became effective August 1, 1989. (Def.'s Ex. P).

Plaintiff presented no evidence that anyone told him in 1994 that he would be entitled to continued medical benefits if he retired at that time. In fact, several people had told him that he would not be entitled to continued medical benefits. (Pl.'s Dep. at 55-56). Furthermore, plaintiff has not presented evidence of any employee other than James Glover who retired before reaching age sixty-two and received continued medical benefits. (Pl.'s Dep. at 56). Plaintiff was provided with defendant's interrogatory responses, however, that contained the names of all other persons who retired from Comcast's southeast region between August, 1989, to December 1995, and who received or who are receiving benefits under the medical plan for retirees.

For some period after his resignation from employment with Comcast, Darby received medical coverage at the employee contribution rate because he was not being charged the correct COBRA rate by the plan administrator, CoreSource. On June 2, 1995, CoreSource wrote plaintiff a letter informing him that an audit by them had determined that the premium with regard to his continuation coverage through COBRA was incorrectly invoiced and also informing him of the

5

correct monthly premium for the remaining months of his COBRA eligibility. (Def.'s Ex. Q). Further correspondence from CoreSource from July, 1995, indicated that Darby elected not to continue his coverage. (*Id.*).

## SUMMARY JUDGMENT STANDARD

Under FED. R. CIV. P. 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing the nonmoving party has failed to present evidence in support of some element of his case on which he bears the ultimate burden of proof. *Celotex*, 477 U.S. at 322-23; *see* FED. R. CIV. P. 56(a) and (b). Once the moving party has met its burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by . . . affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324. Rule 56 (c) mandates the entry of summary judgment against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *Celotex*, 477 U.S. at 322.

If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986) (citations omitted); *accord Spence v. Zimmerman*. 873 F.2d 256 (11th Cir. 1989). Furthermore, the court must "view the evidence presented through the prism of the substantive evidentiary burden," so there must be

6

sufficient evidence on which the jury could reasonably find for the plaintiff. *Anderson*, 477 U.S. at 254; *Cottle v. Storer Communication, Inc.*, 849 F.2d 570, 575 (11th Cir. 1988). Nevertheless, credibility determinations, the weighing of evidence, and the drawing of inferences from the facts are the function of the jury, and therefore the evidence of the nonmovant is to be believed and all justifiable inferences are to be drawn in his favor. *Anderson*, 477 U.S. at 255. The nonmovant need not be given the benefit of every inference but only of every reasonable inference. *Brown v. City of Clewiston*, 848 F.2d 1534, 1540 n.12 (11th Cir. 1988).

## DISCUSSION

Plaintiff is not entitled to continued medical benefits because he "retired" before reaching the minimum age of sixty-two. The Comcast Retiree Benefits Program is unambiguous on that point. It states that continued medical benefits are predicated upon attainment of the minimum age of sixty-two and five years of service. Section 2.09 of the underlying employee benefit plan predicates eligibility for continued coverage for a former employee who has retired on being eligible for continued coverage **in accordance with the retiree benefit program**. Upon his retirement, Darby was not an eligible employee. Moreover, he was aware of this fact.

The Comcast employee benefit program and the Comcast Retiree Benefits Program are separate documents[3]. Darby was no longer eligible for the Comcast benefit program when he ceased to be employed by Comcast. Employment is the expressly stated condition of eligibility

---

[3]"Although 29 U.S.C. §1102(a)(1) requires that an employee benefit plan be established and maintained pursuant to a written instrument, there is no requirement that the written instrument be one all-inclusive document." *Rinard v. Eastern Co.*, 769 F. Supp. 1416, 1423 (S.D. Ohio 1991), *rev'd on other grounds*, 978 F.2d 265 (6th Cir. 1992), *cert. denied*, 113 S. Ct. 1843 (1993). In *Rinard*, a trust document was referenced in the plan document, just as the retiree plan is referenced in the Comcast benefit plan.

as set out in the summary plan description. If Darby had retired after he reached age sixty-two, then he would have been eligible for health insurance benefits under the Group Plan (i.e., Employee Benefit Plan) in effect for all Comcast employees.

A. The Comcast Medical Plan is an "employee welfare benefit plan."

The ERISA statute, 29 U.S.C. §§ 1001-1461 (1994), expressly includes any program established to provide medical benefits as an "employee welfare benefit plan." 29 U.S.C. § 1002(1). In general, ERISA divides employee benefits into two categories: "welfare" benefits and "pension" benefits. 29 U.S.C. § 1002(1)-(2); *see Hozier v. Midwest Fasteners, Inc.*, 908 F.2d 1155, 1160 (3rd Cir. 1990); *Adams v. Avondale Industries, Inc.*, 905 F.2d 943, 947 (6th Cir.), *cert. denied*, 498 U.S. 984 (1990); *Young v. Standard Oil (Indiana)*, 849 F.2d 1039, 1045 (7th Cir.), *cert. denied*, 488 U.S. 981 (1988). The distinction made between welfare plans and pension benefits is not an insignificant one. ERISA imposes stringent accrual, vesting, and funding requirements on pension plans, while there are no such requirements pertaining to welfare benefit plans. 29 U.S.C. §§ 1051, 1081; *see Hozier*, 908 F.2d at 1160; *Adams*, 905 F.2d at 947; *Sejmar v. Warner-Lambert Co.*, 889 F.2d 1346, 1348 (4th Cir. 1989) (citation omitted), *cert. denied*, 498 U.S. 810 (1990); *Young*, 849 F.2d at 1045; *Sutton v. Weirtom Steel Division of Nat'l Steel Corp.*, 724 F.2d 406, 410 (4th Cir. 1983), *cert. denied*, 467 U.S. 1205 (1984). Medical benefits, such as the ones at issue in this lawsuit, fall, without question, into the category of welfare benefits; they are, therefore, unaccrued, unvested benefits that may be amended or eliminated without violating ERISA. *Alday v. Container Corp. of America*, 906 F.2d 660, 663 (11th Cir. 1990), *cert. denied*, 498 U.S. 1026 (1991).

Therefore, the medical plan component of the employee benefit plan is clearly not a "qualified trust pension plan" as defined in 26 U.S.C. § 401 or § 411, and as alleged by the plaintiff.

B.     Plaintiff was not a "vested" participant in the Comcast benefits plan.

The plaintiff bears the burden of proving that his employer's ERISA plan contains a promise to provide vested welfare benefits. *Gable v. Sweetheart Cup Co.*, 35 F.3d 851, 855 (4th Cir. 1994) (citations omitted), *cert. denied*, 115 S. Ct. 1442 (1995). ERISA expressly exempts employee welfare benefit plans from its strict vesting requirements. 29 U.S.C. § 1051(1). An employer may voluntarily undertake an obligation to provide vested welfare benefits but the courts may not infer an intent to vest. *Gable*, 35 F.3d at 855. Rather, a "participant's right to a fixed level of lifetime benefits must be 'found in the plan documents and must be stated in clear and express language.'" *Id.* (citations omitted).

As in *Gable*, Comcast has expressly reserved its right to modify, amend or terminate participants' benefits under the plan, (*see* Def.'s Ex. B at 61; Def.'s Ex. C at 40), precluding any allegation that any of the welfare benefits, including medical benefits, are vested. Thus, the plaintiff cannot meet his burden to show that his health care benefits, for which he was not eligible upon retiring at age fifty-eight, were vested, and no disputed material fact exists on this issue. Plaintiff's claim that he was a "vested participant" in the Comcast benefits plan, (Compl. ¶6), is without foundation.

C.     The plain language of the plan controls.

"The oral representations of a plan administrator cannot alter or change the terms of the plan." *Meadows v. Cagle's, Inc.*, 954 F.2d 686, 690 (11th Cir. 1992) (citing *Nachwalter v.*

9

*Christie*, 805 F.2d 956, 960-61 (11th Cir. 1986)); *Alday*, 906 F.2d at 665. Assuming that Jean Dean or anyone else failed to communicate the plan's terms clearly to Darby or that Darby simply misunderstood them, the terms of the plan were not altered by such mistake or misunderstanding. As the *Meadows* court stated: "When plan documents unambiguously address the substantive rights of the parties at issue, the plan language controls, absent a showing of intentional fraudulent promises by the insurer in informal communications with the insured." *Meadows*, 954 F.2d at 691 (citing *Alday*, 906 F.2d at 666, 666 n.15). Thus, even if Darby did not admit that he was fully aware of the plan's eligibility requirements by the time he retired, and even if Jean Dean failed to communicate the plan's terms clearly to Darby, the plain language of the plan controls. Darby has not made any showing of intentional fraudulent promises by Comcast.

As stated by the Eleventh Circuit in *Alday*, "any retiree's right to lifetime medical benefits at a particular cost can only be found if it is established by contract under the terms of the ERISA-governed benefit plan document." *Alday*, 906 F.2d at 665. No document in evidence gives plaintiff the right to medical benefits upon retirement at age fifty-eight; neither the plan document nor the summary plan description.

Nor has plaintiff produced any authority for his contention that a single employee under age 62 being awarded continued medical benefits upon termination of employment five years earlier should entitle him to the same. This fact, if true, creates no entitlement for Darby to receive continued medical benefits. Moreover, James Glover's termination notice indicates an effective date of December 31, 1988; his retirement was prior to the adoption by Comcast of its self-insured plan on August 1, 1989. It further indicates that the reason for the termination was the elimination of his position. As Gillert explained, when the Retiree Benefits Program was

10

adopted, certain terminated employees may have received some company paid post-retirement medical coverage, as negotiated, on a case-by-case basis. Thus, Mr. Glover's receipt of benefits does not control whether or not plaintiff was entitled to them.

D.   Plaintiff cannot establish reliance on lack of notice of the plan terms.

In order to claim that lack of notice of the plan terms and conditions prohibits the employer from enforcing those terms and conditions, the plaintiff must show some "significant reliance upon, or possible prejudice flowing from" the lack of notice. *Gable*, 35 F.3d at 859 (citations omitted). Darby does not deny that he received a plan document when he enrolled in the Comcast program.

Moreover, he does not allege, and cannot show, significant reliance upon, or possible prejudice flowing from, any lack of an accurate description of the terms of the plan. He admits that prior to his "retirement," he was informed--orally and in writing--that he would not be entitled to continued medical benefits under the Comcast plan. Gillert corresponded with Darby in writing at least three times prior to Darby's notice of retirement of February 22, 1994, reiterating the plan conditions.

Courts may not infer the existence of detrimental reliance or prejudice without some affirmative evidence to that effect. *Id.* (citation omitted). Thus, plaintiff cannot show any reliance or lack of notice of the plan documents since he was well-informed of their contents prior to his retirement announcement.

## CONCLUSION

Plaintiff's allegations as set forth in his Complaint do not create an entitlement to retiree medical benefits under the Comcast plan and there is no disputed material fact on that ultimate

11

issue. Accordingly, Defendant's Motion for Summary Judgment is due to be granted. An order granting Defendant's Motion for Summary Judgment will be entered contemporaneously herewith.

DONE this 31st of January, 1997.

*Sharon Lovelace Blackburn*
SHARON LOVELACE BLACKBURN
United States District Judge